The order below is hereby signed.

Signed: January 14 2022



*Elizabeth L. Gunn*
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:**<br><br>ETS of Washington, LLC,<br>Debtor. | Case No. 20-00397-ELG<br>Chapter 7 |
| William D. White, Chapter 7 Trustee,<br>Plaintiff,<br><br>v.<br><br>WCP Fund I, LLC, 1Sharpe Opportunity Intermediate Trust, and DP Capital, LLC<br>Defendants. | Adv. Pro. No. 21-10005 |

### MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

On February 20, 2021, ETS of Washington, LLC (the "Debtor") filed its Complaint (ECF No. 1), initiating the instant Adversary Proceeding. On February 24, 2021, WCP Fund I LLC ("WCP"), 1Sharpe Opportunity Intermediate Trust ("1Sharpe"), and DP Capital LLC ("DPC") (collectively, the "Defendants") filed their Motion to Dismiss Adversary Proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 5) (the "Motion to Dismiss"). The Court heard initial arguments on the Motion to Dismiss from the Defendants and the Debtor on May 3, 2021, but deferred a full hearing on the Motion to Dismiss due to the pending motion to convert the

1

Debtor's underlying bankruptcy case from chapter 11 to chapter 7, the conversion, and the appointment of a chapter 7 trustee. On October 20, 2021, the Court held a hearing (the "Hearing") on various pleadings, including a further hearing on the Motion to Dismiss at which the chapter 7 trustee was present. At the Hearing, the Court issued an oral ruling on the Motion to Dismiss, finding Counts I, II, and III of the Complaint sufficient to withstand a motion to dismiss, but dismissing without prejudice, and with leave to amend, Counts IV and V. This Memorandum Decision and Order memorializes the findings of fact and conclusions of law as set forth by the Court at the Hearing.

## Background[1]

*A.    Procedural Background*

Prior to commencing the instant Adversary Proceeding, on September 28, 2020 the Debtor filed a voluntary petition for relief under to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").[2] Case No 20-00397-ELG (the "Main Case") ECF No. 1. The Defendants filed a *Motion to Convert Case to Chapter 7* (Main Case ECF No. 107) on May 10, 2021 in the Debtor's main case, and after an evidentiary hearing, on May 24, 2021 the Debtor's case was converted to chapter 7. As more fully set forth in this Court's Memorandum Opinion dated September 23, 2021, at the hearing held August 11, 2021, the Court ruled that after a contested chapter 7 trustee election, William White should continue in the Debtor's as the chapter 7 trustee and, correspondingly, as plaintiff herein. After resolution of the chapter 7 trustee election, the Court provided the chapter 7 trustee an opportunity to respond to the Motion to Dismiss in this

---

[1] Much of the factual history in this adversary proceeding and the Debtor's main case is set forth in two prior Memorandum Opinions entered February 4, 2021 and September 23, 2021. The Court presumes familiarity with those opinions in the issuance of this Opinion.

[2] All section references herein shall be to 11 U.S.C. unless otherwise noted.

2

adversary proceeding and set the matter for a further hearing.

    B.    *Adversary Proceeding Factual Background*[3]

In April 2019, a related company of the Debtor purchased a property in Virginia from WCP, with funding provided by WCP. Compl. at ¶ 4, ECF No. 1. Following the purchase, that same month, WCP "sought out" the Debtor with another development opportunity, this time for property that WCP had foreclosed upon located at 2207 Foxhall Road NW, Washington, D.C. 20007 (the "Property"). *Id.* at ¶ 5. The Property was advertised to the Debtor and others with development plans and the phrase "All Permits Secured." *Id.* at ¶ 6. In an email, a representative of ETS stated that the project had "nearly all approved plans," showed permits received, and provided an estimated after-renovation value of $4.8 million. *Id.* at ¶ 8. The WCP representative further stated that the sole remaining permit needed to commence renovations to the Property was that for storm water management which it was "waiting on . . . DOEE [D.C. Office of Energy & Environment] to approve," and that this permit was the "easiest approval to get" such that it would only take two weeks to obtain. *Id.* at ¶¶ 8, 13.

On May 21, 2019, the Debtor entered into a sales contract for the purchase of the Property (the "Sales Contract") from WCP, which required a $320,000 cash down payment and $1.48 million in financing from WCP. *Id.* at ¶ 9. WCP "pressed" the Debtor to provide a $50,000 deposit by June 5, 2019, with an initial proposed closing date in June 2019. The Debtor relied upon the June 2019 proposed closing date in soliciting investors for the project. *Id.* at ¶¶ 9, 11. However, despite timely payment by the Debtor of the deposit, the closing on the Property did not occur until

---

[3] For the purposes of this Motion to Dismiss, the Court construes the Complaint in the light most favorable to the Debtor and accepts all well-plead factual allegations contained in the Complaint as true. *Indus. Bank v. Turner Constr. Co. (In re Shelton Fed. Grp., LLC)*, 2017 Bankr. LEXIS 4450 at *9 (Bankr. D.D.C. 2017) (citing *Boone v. Hornsby (In re Hornsby)*, 2016 Bankr. LEXIS 3409 at *1 (Bankr. S.D. Ga. 2016)).

July 18, 2019, approximately 40 days late. *Id.* at ¶ 11. At closing, the Debtor paid an additional $336,104.39 in cash, including funds the Debtor obtained from unidentified investors. *Id.* As part of the purchase, the Debtor incurred closing costs of more than $118,000. *Id.* At closing, the Debtor entered into three separate loans with the Defendants, including a loan for purchase and a construction loan for the development of the Property. *Id.* at ¶ 10. Although the Complaint is inconsistent as to the actual amounts, what is clear is DP Capital, LLC was paid a purchase price of $1.8 million at closing. *Id.*

Following closing, the Debtor alleges that it then discovered WCP had misrepresented the status of the storm water management permit from DOEE, "effectively invalidat[ing] the development plan." *Id.* at ¶ 16. The Debtor further alleges that WCP failed to disclose that the previous owner of the Property had been unable to secure another necessary permit from the District of Columbia Department of Transportation Urban Forestry Division ("UFD") due to the presence of Heritage Trees[4] on the Property, which was necessary for the approval of a storm water management permit, thus rendering the project unbuildable in the manner as advertised. *See id.* The Debtor alleges that the inability of the previous owner to obtain the same permits ultimately resulted in WCP's foreclosure on the Property prior to seeking out WCP's purchase. *See id.* at ¶¶ 13, 16.

Due to the issues raised by the Heritage Tree and the resulting lack of the storm water permit, just like the previous non-WCP owner, the Debtor has been unable develop the Property utilizing the plans supplied by WCP as advertised. *Id.* at ¶ 16. To try and find an alternative

---

[4] A "Heritage Tree" is a tree with a circumference of 100 inches or more. D.C. Code § 8–651.02(3A). Pursuant to D.C. Code § 8–651.04a, it is unlawful for any person or nongovernmental entity to remove or destroy any Heritage Tree without first obtaining a permit. A permit to remove a Heritage Tree is issued only where the tree in question is hazardous, identified by regulation as appropriate for removal, or can be safely relocated to another area within the District. D.C. Code § 8 – 651.04a(b)(1-2).

4

development possibility, the Debtor paid to have the Property redesigned to avoid the Heritage Tree issue (in order to qualify for a storm water permit), but the redesign did not provide what the Debtor characterized as an "economically viable option." *Id.* at ¶ 20. The onset of the COVID-19 pandemic created further troubles for the Debtor's attempt to obtain a permit (of any sort) related to the Heritage Tree and ultimately redevelop the Property. *Id.* at ¶ 21.

Seeking to avoid further financial hardship and relying on D.C. Code § 42-3191.01[5], in April 2020 the Debtor requested WCP provide it with mortgage payment relief. *Id.* at ¶ 22. In response, WCP stated that it required the Debtor to be current on its mortgage payments in order to qualify for relief. *Id.* The Debtor was current on its payments. *Id.* WCP then conditioned any payment relief on withholding draws from the construction loan and requiring that any such relief be contingent on the Debtor's continued payments on a separate property located in Virginia owned by a sister entity. *Id.* at ¶ 23. However, despite these stated conditions, WCP failed to provide the Debtor with instructions or procedures to obtain mortgage relief. *Id.* at ¶ 24. The Debtor was unable to obtain mortgage relief from WCP and was unable to draw funds from the construction loan due to the inability to begin construction. *Id.* at ¶ 25. As a result, the Debtor stopped making mortgage payments on the Property in late spring 2020. *Id.* On September 1, 2020, DPC[6] issued a Notice of Foreclosure on the Property, with the foreclosure to take place on September 29, 2020. *Id.* at ¶ 26. On September 28, 2020, the Debtor filed for relief under chapter 11 of the Bankruptcy Code to stop the foreclosure. *Id.*

---

[5] As discussed *infra* in section (II)(c)(iii), D.C. Code § 42-3191.01 was enacted in April 2020 and supplemented initially in June 2020 in response to the COVID-19 pandemic to provide relief for residential and commercial mortgage borrowers.

[6] WCP transferred the Debtor's loan to DPC for the purpose of foreclosing. Compl. at ¶ 26, ECF No. 1.

C.    *Defendants' Motion for Relief*

On January 23, 2021, in the Debtor's Main Case, the Defendants filed a *Motion for Relief from the Automatic Stay as to the Property* (Main Case ECF No. 47) (the "Motion for Relief"), seeking relief for cause pursuant to § 362(d)(1).[7] In support of the Motion for Relief, the Defendants cited to the Debtor's failure to make any post-petition payments necessary to provide adequate protection to the secured lenders. Mot. Relief at 3-4, ECF No. 47. After a two-day evidentiary hearing, the Court granted the Defendant's Motion for Relief and entered an *Order Granting the Motion for Relief* (ECF No. 59), finding that Defendants had a colorable claim in the Property, the Property was undersecured, and the lack of adequate protection entitled the Defendants to relief. The Defendants foreclosed on the Property in May 2021.

D.    *Complaint & Motion to Dismiss*

The Complaint alleges five counts against the Defendants: Count I – Fraud in the Inducement; Count II - Negligent Misrepresentation by the Defendants; Count III - Violation of Mortgage Relief Law[8] (the "Mortgage Relief Law"); Count IV – Slander of Title; and Count V – Breach of Duty of Good Faith and Fair Dealing. The Defendants timely filed their Motion to Dismiss, arguing that each of the five counts contained in the Complaint lacked merit and seeking relief under Federal Rule of Civil Procedure 12(b)(6) (the "Civil Rules"), made applicable by Federal Rule of Bankruptcy Procedure 7012 (the "Bankruptcy Rules"). On April 23, 2021, prior to the conversion to chapter 7, the Debtor filed its *Opposition to the Motion to Dismiss* (ECF No.

---

[7] The Motion for Relief filed on January 23, 2021 was the second motion for relief filed by the Defendants in the Main Case. The first motion sought relief under § 362(d)(3). The Court found that § 362(d)(3) was not applicable to the Debtor. That decision is memorialized in a Memorandum Opinion issued February 2, 2021 (Main Case ECF No. 59).
[8] D.C. Code § 42-3191.01 is referenced by the Debtor in other parts of the Complaint but not specifically in Count III. From the arguments of counsel and the other pleadings in this case, including but not limited to the Defendant's Motion for Summary Judgment, the Court infers from the Complaint that references to the "Mortgage Relief Law" are to D.C. Code § 42-3191.01.

6

14). On April 27, 2021, the Defendants filed their Reply in support of the Motion to Dismiss. (ECF No. 16). Due to the pending conversion and the delay due to the contested trustee election, the Court did not hold a full hearing on the merits of the Motion to Dismiss until the Hearing on October 20, 2021. After conversion and the Court's decision on the trustee election, the Plaintiff chapter 7 trustee did not file any pleading with the Court in response to the Motion to Dismiss, instead implicitly relying on the Debtor's opposition at the Hearing.

In the time between the completion of briefing and the Hearing, the Defendants filed a *Motion for Summary Judgment as to Count III of the Debtor's Complaint* (ECF No. 27) (the "Defendant's Motion for Summary Judgment") and a counterclaim against the chapter 7 trustee in his capacity as chapter 7 trustee of the Debtor's estate (ECF No. 40) (the "Counterclaim"). The Defendant's Motion for Summary Judgment is based upon the same underlying premise as the Defendant's Motion to Dismiss Count III of the Complaint – that the Debtor is not eligible for relief under the Mortgage Relief Law. The chapter 7 trustee did not respond to the Defendant's Motion for Summary Judgment but did file a motion to dismiss the Counterclaim. The Motion for Summary Judgment raised substantially the same arguments with respect to Count III as the Motion to Dismiss and was heard at the same time as the Motion to Dismiss. The chapter 7 trustee's motion to dismiss Counterclaim was not fully briefed until after the Hearing, and therefore was not considered at the Hearing.

## Discussion

### I. *Legal Standard – Rule 12(b)(6)*

Civil Rule 12(b)(6) provides that a complaint must be dismissed if it fails to state a claim upon which relief may be granted. To withstand a motion to dismiss pursuant to Civil Rule 12(b)(6), a complaint must contain sufficient factual matter that, when accepted as true, establish

7

"a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007)). When evaluating a motion to dismiss, a court must construe well pled facts in a light most favorable to the non-moving party to determine whether the pleading states a plausible claim for relief. *Twombly*, 550 U.S. at 570; *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). However, a court is not bound to "accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). Except in extraordinary circumstances, a 12(b)(6) motion to dismiss is evaluated solely with respect to whether the allegations contained in the complaint and any exhibits thereto contain a plausible claim for relief, without the introduction of defenses to the claim, and without further supplementation to the record. *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Civil Rule 12(d).

When considering whether a complaint adequately states a claim for relief under Rule 12(b)(6), the court must apply the pleading standards established by Civil Rule 8 and, if applicable, Civil Rule 9. Fed. R. Civ. P. 8; Fed. R. Civ. P. 9. Civil Rule 8, made applicable to this adversary proceeding by Bankruptcy Rule 7008, requires that a "short and plain statement of the claim showing that the pleader is entitled to relief" be included in any pleading asserting a claim for relief. Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. This Rule operates in conjunction with Rule 12(b)(6) to dismiss actions for failure to state a claim. *See Curtis v. Chapman Family Trust (In re Chapman)*, 628 B.R. 512, 521 (Bankr. S.D. Tex. 2021). Rule 9 of the Civil Rules requires a plaintiff asserting a claim grounded in fraud meet a "heightened" pleading standard. *United States*

*ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F.4th 412, 421 (D.C. Cir. 2021). When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In bringing a claim for fraud, a plaintiff must "state the time, place and content of the false misrepresentations" and "identify individuals allegedly involved in the fraud." *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 54 (D.D.C. 2017). Thus, Count I of the Complaint, Fraud in the Inducement, is subject to a heightened pleading standard in order to withstand a motion to dismiss. It is with these standards in mind that the Court considers the Defendants' Motion to Dismiss.

## II.   *Defendants' Motion to Dismiss*

### a.   **Defendants' Arguments**

The Defendants Motion to Dismiss seeks dismissal of the Complaint under Civil Rule 12(b)(6) on four principal grounds: (1) the Mortgage Relief Law is not applicable *sub judice* as to Count III, or stated otherwise, the Debtors do not have a private right of action under the Mortgage Relief Law (the same argument raised in the Defendant's Motion for Summary Judgment on Count III); (2) the integration clause contained in the Sales Contract bars the Debtor's recovery; (3) Counts I, II, IV, and V violate the economic loss doctrine; and (4) failure to state claims for fraud in the inducement, negligent misrepresentation, and slander of title, including failure to comply with the heightened pleading requirements of Civil Rule 9.

The Motion to Dismiss includes in its content and as exhibits the text and copies of documents not wholly pled or included in the Complaint (the "Documents"). Mot. to Dismiss at 4-7, ECF No. 5. The Defendants assert that the Debtor "conveniently neglected to affix" the Documents to its Complaint and, therefore, the Court should consider the Documents when evaluating the Motion to Dismiss as documents integral to and explicitly relied upon in the

Complaint. *See id.* As a general rule, when considering a motion brought under Rule 12(b)(6), a court may not consider evidence offered by the moving party or its opponent, is bound by the four corners of the complaint, the exhibits attached thereto, and those incorporated by reference by the Plaintiff. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The Defendants argue that the Court should consider the Documents based upon the proposition that a court may evaluate documents produced by a defendant if the plaintiff integrally relied upon the documents in the complaint. *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009)); *Branin v. TMC Enters., LLC*, 832 F. Supp. 2d 646, 649 (W.D. Va. 2011); *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 2010 WL 2732334, at *2 n.2 (D. Md. 2010)). Central to the Defendants' argument is the proposition that "the court may consider documents extrinsic to the complaint if they are integral to and explicitly relied on in the complaint and if there is no dispute as to their authenticity" but only if any such documents are such that their very existence gives rise to the cause of action asserted. *Tinsley*, 4 F. Supp. 3d at 819 (quotations and citations omitted). The Documents offered by the Defendants, while referenced in part in the Complaint, are not such that their very existence alone, and not the mere information they contain, give rise to the legal rights asserted by the Debtor. *See id.*; *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1280 (C.D. Cal. 2016). The causes of action in the Complaint rely upon allegations related to the Defendants' statements and conduct in the negotiation process necessarily occurring outside of the Documents and do not arise solely from the Documents themselves. *See* Compl. at ¶¶ 31-60. Therefore, if the Documents were relied upon it would result in the conversion of the Motion to Dismiss to a motion for summary judgment on all counts of the Complaint. *See Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017). As such, the Court expressly declines to consider the Documents or convert the Motion to

Dismiss to a motion for summary judgment.

### b. Defendants' Arguments Regarding the Integration Clause and the Economic Loss Doctrine are Incorrectly Brought Under Rule 12(b)(6)

Although pled as a Motion to Dismiss under Rule 12(b)(6), the Defendant's arguments as to the effect of an integration clause in the Sales Contract and the economic loss doctrine are affirmative defenses not appropriately pled as motions to dismiss for failure to state a claim. *See Am. Home Mortg. v. Showcase of Agents, LLC (In re Am. Home Mortg.)*, 458 B.R. 161, 172 (Bankr. D. Del. 2011). Affirmative defenses may only be considered by a court on a 12(b)(6) motion where the affirmative defense in question is found on the face of the complaint. *Parker v. Miller (In re Reading Broad., Inc.)*, 390 B.R. 532, 550 (Bankr. E.D. Pa. 2008). If the affirmative defense is not apparent on the face of the complaint, such a defense must be brought before the court in a pleading such as an answer. *Griffith v. Cinepolis*, 2021 LEXIS 135580 at *13 (N.D. Tex. 2021) (citing *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2019)). In addition, the Defendant's economic loss doctrine and integration clause arguments rely upon facts and documents excluded from consideration of the Motion to Dismiss and not included in the Complaint, and thus, are more appropriately raised as affirmative defenses in an answer or other pleading on the merits. Therefore, the Motion to Dismiss is denied on arguments (2) and (3), the existence of an integration clause and the application of the economic loss doctrine. Having dispensed with the integration clause and economic loss doctrine arguments, the Court will evaluate each of the five counts of the Complaint under Rule 12(b)(6).

### c. Motion to Dismiss for Failure to State a Claim

#### i. Count I - Fraud in the Inducement

The elements of fraud in the inducement under the law of the District are the same as those required to establish fraud at common law: "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken . . . in reliance upon the representation, (6) which consequently resulted in provable damages." *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 35 (D.D.C. 2015) (quoting *Wetzel v. Capital City Real Estate*, 73 A.3d 1000, 1002-03 (D.C. 2013) (citation omitted)); *see also Meehan v. U.S. Office Prods. Co. (In re U.S. Office Prods. Co. Sec. Litig.)*, 251 F. Supp. 2d 77, 100 (D.D.C. 2003). As stated, *supra*, each of these elements must be pled with particularity as required by Civil Rule 9.

In the Complaint, the Debtor alleges that WCP made false representations intended to induce the Debtor into executing a contract for the sale of the Property. Compl. at ¶ 32. Specifically, the Debtor asserts that WCP misrepresented the existence and status of permits required to develop the Property as set forth in the included plans, the after-development value of the Property, the impact of the Heritage Tree,[9] and the feasibility of the development plans marketed with the sale of the Property, *inter alia* (the "Misrepresentations"). The Debtor included in its allegations the timing of the Misrepresentations, the individuals who conveyed the Misrepresentations, and the content of the Misrepresentations, thus meeting the heightened pleading standard of Civil Rule 9 for a cause of action of fraud. The Complaint goes on to allege that as a result of the Misrepresentations, the Debtor was unable to develop the Property as advertised or expected. Therefore, the Complaint, as pled meets elements of false representation

---

[9] While other filings and representations to the Court indicate that multiple Heritage Trees exist on the Property, only one is featured in the Complaint.

12

and materiality of the false representation. *Id.* at ¶¶ 31-47. The Complaint further alleges that the Defendants knew that the Misrepresentations were false because the Defendants knew that the previous owner of the Property failed to obtain the same permits necessary to build the project as advertised, and that the Defendants intended to deceive the Debtor as to the status of such permits, satisfying the pleading requirements for both the knowledge and intent elements respectively. *Id.* at ¶¶ 47-49. Finally, the Complaint alleges that the Debtor relied upon the Misrepresentations to its detriment, suffering significant economic losses including increased closing costs, interest from investors, post-closing mortgage payments meeting the damages requirement, and ultimately loss of the Property at foreclosure. *Id.* at ¶¶ 48-53. *See Aston*, 248 F. Supp. 3d at 54. Accordingly, taking the Debtor's allegations to be true, the Court finds that the Complaint sufficiently pleads a cause of action for fraud in the inducement and the Motion to Dismiss as to Count I is denied.

### ii.     *Count II - Negligent Misrepresentation*

To state a claim for negligent misrepresentation under District of Columbia law, the plaintiff must show: (1) that the defendant "made a false statement or omitted a fact that he had a duty to disclose," (2) that the statement or omission "involved a material issue," and (3) that the plaintiff "reasonably relied upon the false statement or omission to his detriment." *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999); *accord Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015). Stated another way, a negligent misrepresentation occurs where a party makes false representations about a material issue on which another party reasonably relies. *See Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 254 (D.D.C. 2004). However, "generalized statements of optimism that are not capable of objective verification" cannot constitute grounds for a misrepresentation claim. *S.E.C. v. E-Smart Techs., Inc.*, 31 F. Supp. 3d 69, 83 (D.D.C. 2014) (quoting *Freeland v. Iridium World Commc'ns, Ltd.*, 545 F. Supp. 2d 59, 76 (D.D.C. 2008)).

13

As plead in the Complaint, the statements alleged to be made by the Defendants and their representatives cannot be described as "generalized statements of optimism," but rather, specific, and detailed representations about crucial permits and other aspects of the Property that the Defendants knew to be false. In particular, the Complaint alleges that WCP's Director of Sales told the Debtor that:

> The project comes with nearly all approved plans, waiting on Storm Water Management DOEE to approve. Full access to DCRA Projectdox as part of the sale. Existing historic farmhouse has been approved to be transported further up the lot to allow for additional space for the new build portion of the property. This would be a renovation plus ground up project with pool and walkway between sections for the home. Asking Price $1,800,000. Est. Renovation $1,200,000. After Repair Value 4,800,000. Est. Closing Date 5/10/19.

Compl. at ¶ 8, ECF No. 1. These alleged misrepresentations, along with the many others referenced in the Complaint, convey the status of the Property and the project with such specificity that the Debtor has sufficiently plead a cause of action for negligent misrepresentation and the Motion to Dismiss Count II is denied.

### iii.    *Count III – Violation of Mortgage Relief Law*

The Defendant's Motion to Dismiss Count III of the Complaint argues that the Mortgage Relief Law does not create a private cause of action, meaning that the Debtor cannot seek to recover under the statute and, therefore, the Debtor has failed to state a claim for relief. Similarly, in the Defendant's Motion for Summary Judgment, the Defendants argue that Count III of the Complaint fails as a matter of law because the Mortgage Relief Law does not create a private cause of action. The question posed in this case as to whether the Mortgage Relief Law creates a private cause of action appears to be an issue of first impression in not just this Court but in all courts in the District of Columbia. As of the date of this Memorandum Opinion, it appears no other court has interpreted any provision of the Mortgage Relief Law including whether it creates a private

cause of action.

On April 7, 2020, in response to the COVID-19 pandemic, the Council for the District of Columbia (the "Council") unanimously passed temporary legislation called the COVID-19 Response Supplemental Emergency Amendment Act of 2020 (the "Emergency Act"). The Emergency Act was signed into law by District of Columbia Mayor Muriel Bowser on April 10, 2020, effective as of March 11, 2020. On April 21, 2020, the Council passed the COVID-19 Supplemental Corrections Emergency Amendment Act of 2020, amending the Emergency Act, which was signed into law on June 8, 2020 (the "COVID-19 Act"). D.C. Act 23-328, 67 DCR 7598.[10] Both the Emergency Act and COVID-19 Act contained provisions to provide relief for borrowers under residential or commercial mortgage loans, codified at D.C. Code § 42-3191.01, referred to herein as the Mortgage Relief Law.

Pursuant to the Mortgage Relief Law, during the effective time period of the temporary legislation which began March 11, 2020 and was applicable at all times relevant to this Adversary Proceeding[11], mortgage lenders such as the Defendants were required to allow borrowers to defer payments for at least 90 days, waive any late fees accrued during the COVID-19 public health emergency declared by the Mayor of D.C., and establish an application procedure for the deferment program. D.C. Code §§ 42-3191.01(a-b). The Mortgage Relief Law further required that a lender approve a borrower's application for the deferment program where the borrower (1) demonstrated financial hardship resulting from the public health emergency and (2) agreed to pay

---

[10] Since its original enactment, the provisions of § 42-3191.01 have been extended and amended by a number of additional temporary legislative actions. The law in its current form may be found at https://code.dccouncil.us/us/dc/council/code/sections/42-3191.01 html (last visited January 13, 2022).

[11] As of the date of this Memorandum Opinion, the expiration of time period for relief under § 42-3191.01(a) was not extended past November 5, 2021.

15

the deferred payments within a reasonable time agreed to by the parties, or within 3 years of the deferment period. D.C. Code § 42-3191.01(c). The Mortgage Relief Law not only created a relief framework for borrowers, but also created penalties for lenders who failed to comply. D.C. Code § 42-3191.01(k). Lenders who failed to offer relief to qualifying borrowers under subsection (c) of the Mortgage Relief Law are subject to the fines and other penalties contained in D.C. Code § 26-1118. *Id.* Under D.C. Code § 26-1118, the Commissioner of the Department of Insurance, Securities, and Banking (the "Commissioner") is empowered to revoke or suspend the licenses of lenders to operate within the District of Columbia, as well as impose monetary penalties. In addition, D.C. Code § 26-1118(e) states that nothing therein "shall be construed to preclude any . . . entity who suffers a loss as a result of any violation of this chapter from maintaining an action to recover damages or restitution and, as provided by statute, attorney's fees." D.C. Code § 26-1118(e). It is upon this section that the Debtor relies in Count III.

The Defendants argue that the Debtor has sought relief from the incorrect authority in filing Count III because the power to impose penalties under D.C. Code § 26-1118 lies solely with the Commissioner. However, this argument fails to address subsection (e), which clarifies that nothing contained under the statute serves to foreclose a party from maintaining an action for damages resulting from the violation of the statute itself. In the only case discussing D.C. Code § 26-1118(e), the United States District Court for the District of Columbia specifically recognized that the language therein does not preclude private parties from bringing actions to recover for violations. *Bynum v. Equitable Mortg. Grp.,* 2005 U.S. Dist. LEXIS 6363, at *53 (D.D.C. 2005) (finding that although D.C. Code § 26-1118 provided for a private cause of action, such right was limited by a more specific provision found elsewhere in the D.C. Code limiting the right to a specific class of plaintiff). Unlike in *Bynum*, there is no limiting language in the Mortgage Relief

16

Law sections of the D.C. Code as to the type of plaintiff. Therefore, the Court finds that a private cause of action is available under D.C. Code § 26-1118(e), and the Mortgage Relief Law as it incorporates that section therein.

Finding that there is a private cause of action under the Mortgage Relief Law, the Court will next address if the Complaint sufficiently pled such a cause of action. A borrower is entitled to relief from a lender under the Mortgage Relief Law where it (1) demonstrates financial hardship and (2) agrees to pay the deferred payments within a reasonable time agreed to by the parties or within 3 years of the deferment period. D.C. Code § 42-3191.01(c). In the Complaint, the Debtor alleges that WCP qualifies as a "lender" under the Mortgage Relief Law as an entity registered to conduct business in the District of Columbia that provided a mortgage loan to the Debtor. Compl. at ¶¶ 63-64. The mortgage loan issued by WCP was for the purchase and development of the Property. *Id.* at ¶ 65. WCP failed to provide a deferment option, waive late fees, or afford any other type of relief to the Debtor as required by the Mortgage Relief Law, despite the Debtor's demonstrated financial hardship. *Id.* at ¶¶ 69-70. Indeed, "WCP impermissibly qualified the possibility of relief on the need for [the Debtor] to be current on its mortgage payments." *Id.* at ¶ 72. Thus, Count III of the Complaint states a claim damages related to the Defendants' failure to comply with the Mortgage Relief Law, and the Defendants' Motion to Dismiss is denied as to Count III.

### iv.    *Count IV - Slander of Title*

Slander of title "is closely related to traditional libel and slander except that the injury is not to personal reputation, but rather to the plaintiff's interest in, or the quality of, the plaintiff's property." *Whetstone Candy Co., Inc. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 81 n.5 (D.D.C. 2004). In the District of Columbia, a cause of action for slander of title requires three

17

elements: "(1) the communication relating to the title was false and malicious; (2) damages resulted from the publication of the statements; and (3) if special damages are sought, the underlying damages must be pled with specificity." *Psaromatis v. English Holdings I, LLC*, 944 A.2d 472, 488 n.20 (D.C. 2008). Here, the Debtor has failed to plead any of the requisite elements to establish a claim for slander of title.

In Count IV, the Debtor asserts that the Defendants committed slander of title when they initiated and publicized the Notice of Foreclosure on the Property. Specifically, the Debtor claims that the Notice of Foreclosure was disparaging in nature and the Debtor "will suffer damages as a result," not that it *has* incurred any damages. *See* Compl. at ¶ 81, ECF No. 1. However, this argument fails to acknowledge the Court's findings when granting the Defendant's Motion for Relief, specifically that the Defendants had a colorable claim to the Property and the operative facts related to the Defendant's interest in the property at the time of the Motion for Relief were no different than when the Notice to Foreclose was published. *See* Order Granting Mot. Relief, ECF No. 59. Thus, the Notice of Foreclosure was not false. Further, the Complaint fails to allege any damages that the Debtor suffered as a result of the publication of the Notice of Foreclosure. Accordingly, the Debtor has failed to plead a claim for slander of title and the Motion to Dismiss is granted as to Count IV.

### v.     *Count V – Breach of Duty of Good Faith and Fair Dealing*

In the District of Columbia, "all contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (internal quotation marks omitted) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)). A successful claim for breach of the duty of good faith

and fair dealing requires "more than mere negligence; examples include lack of diligence, purposeful failure to perform, and interference with the other party's ability to perform." *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013). "Fair dealing means reasonable conduct that is not arbitrary and capricious." *Id.* Importantly, a claim for breach of the duty of good faith and fair dealing requires that the breach "arise out of the performance or enforcement of the contract, not out of the contract negotiations." *Campbell v. Nat'l Union Fire Ins. Co.*, 130 F. Supp. 3d 236, 265 (D.D.C. 2015) (quoting *C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 275 (D.D.C. 2009) (internal quotation marks omitted)).

In asserting bad faith against the Defendants, the Debtor has conflated fraudulent misrepresentation with a breach in the duty of good faith and fair dealing. Here, the Debtor has alleged that the Defendants breached their duty of good faith and fair dealing under the Sales Contract by misrepresenting facts material to the bargain and negotiation of the contract. Compl. at ¶¶ 83-89, ECF No. 1. A claim for breach of the duty of good faith cannot arise out of contract negotiations and must instead arise out of a party's failure to perform or enforce the contract. *Campbell*, 130 F. Supp. 3d at 265. The Complaint contains many allegations related to bad faith in the negotiation process, but entirely fails to allege any post-closing breach of good faith. Compl. at ¶¶ 83-89, ECF No. 1. Accordingly, the Debtor has failed to adequately plead a claim for the breach of the duty of good faith and fair dealing and the Motion to Dismiss is granted as to Count V.

## **Conclusion**

Based upon the foregoing, the Court finds that the Debtor has sufficiently plead causes of action in Counts I, II, and III. The Debtor failed to sufficiently plead Counts IV and V, however, the Court granted the chapter 7 trustee leave to amend as more fully set forth in the Court's *Order*

19

on the Defendants' Motion to Dismiss Adversary Proceeding, Debtor's Motion to Dismiss Adversary Proceeding, Debtor's Motion to Dismiss Main Case, Motion for Summary Judgment as to Count III, and Objection to Secured Claims* entered October 22, 2021 (ECF No. 47) (the "Prior Order").

It is therefore ORDERED that:

1) The *Motion to Dismiss Adversary Proceeding* (ECF No. 5) is GRANTED as to Counts IV and V of the Complaint, with leave for the chapter 7 trustee to amend as more fully set forth in the Prior Order.

2) The *Motion to Dismiss Adversary Proceeding* (ECF No. 5) is DENIED as to Counts I, II, and III, as set forth in the Prior Order.

[Signed and dated above.]

Copy to: All counsel of record.